UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

Case No. 2:22-cr-20437-1

HONORABLE STEPHEN J. MURPHY, III

v.

WILLIAM BROWN,

          Defendant.

                                      /

**OPINION AND ORDER**
**GRANTING MOTION TO SUPPRESS [16]**

The Government charged Defendant William Brown with two counts of carjacking in violation of 18 U.S.C. § 2119 and two counts of brandishing a firearm in violation of 18 U.S.C. § 924(c). ECF 9. Defendant moved to suppress certain incriminating statements that he made during a police interrogation. ECF 16. The parties briefed the motion.[1] ECF 23; 25. For the reasons below, the Court will grant Defendant's motion to suppress.

**BACKGROUND**

Detroit police officers arrested Defendant in July 2022. ECF 23, PgID 72. The officers suspected that Defendant had perpetrated two car thefts earlier that same

---

[1] The Court will resolve the motion on the briefs without a hearing because the main issues are "entirely legal in nature"; an evidentiary hearing is only required "if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that [there are] *contested issues of fact*." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (emphasis in original) (quotation omitted); *see* E.D. Mich. L. Crim. R. 12.1(a); E.D. Mich. L.R. 7.1(f)(2).

1

day. *Id*. at 69–72. In the first car theft, a "victim was pumping gas" into his Ford Mustang at 2:40 a.m. "when an individual approached him [and,] at gun point[,] demanded the vehicle." ECF 16, PgID 46. About two hours later, a camera recorded the stolen Mustang drive into a different gas station. ECF 23, PgID 71. A man emerged from the Mustang and "pointed a gun" at the victim of a second violent theft who was "pumping gas into his Dodge Charger." *Id*. The victim fled, and the gunman "entered the Dodge Charger and drove away"—followed by the Mustang. *Id*. At 4:00 p.m. that day, "Detroit Police officers observed [Defendant] driving [the first victim's] Mustang." *Id*. at 72. Defendant drove the Mustang into an alley and exited the car. *Id*. He was arrested, and the keys to the Mustang were found in his pocket. *Id*.

The next day two Government agents, one State and one federal, interrogated Defendant for about seventy minutes.[2] *See* ECF 24. The agents read Defendant his *Miranda* rights, and he certified that he understood his rights and was not under the influence of drugs or alcohol. *Id*. at 2:07:55; *see* ECF 23, PgID 74. The following conversation then took place:

- **Agent A**: "The car you walked out of right before you got arrested, how did you get that? The Mustang. You got out of it, right?"
- *Defendant:* "Yeah"
- **Agent A:** "You got arrested with the keys in your pocket. Where did that car come from?"
- *Defendant*: "Uh really uh I shouldn't have gotten in there, but I looked, the things the windows were down and I joyrided."
- **Agent A**: "So the car is just sitting there with the keys in it, and you just got in it and drove off?"

---

[2] The Government filed a video recording of Defendant's interview in the traditional manner. ECF 24 is an index of the exhibits to the Government's response brief that notes that the video was filed in the traditional manner. To cite the video, the Court will cite ECF 24 and then detail the relevant time stamps.

- o *Defendant*: "Mhmm. . . ."
- o **Agent B**: "Listen listen let's get back to how did you get this car."
- o *Defendant*: "I told you how I got the car."
- o **Agent B**: "That's a lie man. You don't want me to write that down because I could charge you with the lie and you could sit doing five years just for that. That's stupid. For every lie you tell."
- o *Defendant*: "Alright man. Look, I'll just go back to my cell then."
- o **Agent A**: "No, we're going to talk about this. You got nothing to do. We're trying to get to the bottom of this. . . ."
- o *Defendant*: "I don't want to talk."
- o **Agent A**: ". . . because you weren't doing this shit by yourself."
- o *Defendant*: "I don't want to talk."
- o **Agent A**: "We do. Who's driving the other car?"
- o *Defendant*: "I ain't got nothing to talk about."
- o **Agent B**: "You just going to eat the whole thing yourself?"

ECF 24 at 2:13:00–2:13:35, 2:18:40–2:19:19. The agents then interrogated Defendant for another sixty minutes. *See id.* During the interrogation, Defendant "made incriminating statements." ECF 16, PgID 51. Defendant thus moved to suppress the statements he made in the interrogation after he invoked his right to remain silent at "approximately [fifteen] minutes and [twenty] seconds into the interview." *Id.* at 49.

## LEGAL STANDARD

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (extending the protection from compulsory self-incrimination to the States through the Fourteenth Amendment). "A person held for interrogation must be clearly informed that he has the right to remain silent." *Hendrix v. Palmer*, 893 F.3d 906, 918 (6th Cir. 2018) (internal quotation marks and quotation omitted). After an individual is informed of his right, "[i]f the individual

3

indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona,* 384 U.S. 436, 473–74 (1966) (footnote omitted). If the interrogation does not cease, "statements made in violation of *Miranda* must be suppressed" *United States v. Burton*, 828 F. App'x 290, 292 (6th Cir. 2020); *Michigan v. Mosley*, 423 U.S. 96, 104 ("[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'").

"[N]o ritualistic formula or talismanic phrase is essential" to invoke the right to remain silent. *Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008) (quotation omitted). Instead, "a suspect must [simply] unambiguously invoke his right to counsel." *Id.* (citation omitted). "[A] suspect must assert his right to remain silent with sufficient clarity that a reasonable officer would perceive it as such under the circumstances." *Id.* (citations omitted).

## DISCUSSION

Because any reasonable officer would have understood that Defendant unambiguously asserted his Fifth Amendment right to silence, the Court will grant Defendant's motion. At 2:19:05 p.m., Defendant told the Government "I don't want to talk." ECF 24 at 2:19:05. He then repeated, "I don't want to talk." *Id.* at 2:19:08–09. In response, the Government's agents said, "We do." *Id.* at 2:19:11–12. But Defendant's words were a clear invocation of his right to remain silent. *See United States v. Calvetti*, 836 F.3d 654, 661 (6th Cir. 2016) (holding that the defendant

4

writing "no" in response to the question "Are you willing to answer some questions?" was unambiguous). Indeed, it is hard to imagine a clearer invocation of the Fifth Amendment's protections. Defendant's unequivocal statement, "I don't want to talk" signaled to the agents that he was asserting his Fifth Amendment right to silence. After hearing that statement, the agents should have ended the interrogation. *See Mosley*, 423 U.S. at 104.

The Government argued that "[i]f a suspect makes an ambiguous or equivocal statement or makes no statement, then the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." ECF 23, PgID 76 (cleaned up). The Government contended that Defendant's statements were ambiguous because the Eighth Circuit has held that "'I don't want to talk, man,' was not an unequivocal invocation of the right to remain silent." *Id.* at 77–78 (citing *United States v. Adams*, 820 F.3d 317, 323 (8th Cir. 2016)). But the Government misconstrued *Adams*, besides which is not binding on the Court. In that case the defendant said, "I don't want to talk man*, I mean, I.*" 820 F.3d at 323 (emphasis added). The Eighth Circuit held that the defendant's immediate equivocation "I mean, I" made his invocation ambiguous. *Id.* The court held that after the defendant had "said 'Nah, I don't want to talk, man. I mean, I,' he immediately proceeded to engage in an exchange with [the government's agent]. The phrase 'I mean' signaled that [the defendant] intended to clarify the statement, 'I don't want to talk, man,' and the statement was therefore ambiguous." *Id.* But *Adams* is distinguishable from the present case. Here, Defendant did not equivocate when he

5

asserted his Fifth Amendment right. Instead, he reasserted his state of mind. *See* ECF 24, 2:19:05–09 ("I don't want to talk. . . . I don't want to talk."). Because Defendant unambiguously invoked his Fifth Amendment right to remain silent at 2:19:05 p.m. on July 29, 2022, the Court will suppress any statements he made after 2:19:05 p.m. on that date. *See Burton*, 828 F. App'x at 292.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to suppress statements that he made after 2:19:05 p.m. on July 29, 2022 is **GRANTED**.

**SO ORDERED.**

                                      s/ Stephen J. Murphy, III
                                      STEPHEN J. MURPHY, III
                                      United States District Judge

Dated: December 22, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 22, 2022, by electronic and/or ordinary mail.

                                      s/ David P. Parker
                                      Case Manager